# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERCA, <br> Plaintiff, <br> v. <br> CODY SAWYER, <br> Defendant. | Case No. 2:18-cr-00166-JAD-NJK-1 <br><br> **ORDER** |

## BACKGROUND

Cody Sawyer made his initial appearance on May 1, 2020 in response to a petition to revoke his supervised release. (ECF No. 37.) On that day, defense counsel requested a continuance. (*Id.*) The court held the continued detention hearing on May 5, 2020. (ECF No. 41.) At the conclusion of the hearing, this court asked the parties if they would consent to the court taking some additional time to make a decision. The parties agreed to that request. (*Id*.)

Cody Sawyer was convicted of being a felon in possession of a firearm and commenced his period of supervised release on July 17, 2019. By all accounts, it appears he was doing reasonably well on supervision despite the fact that he was using marijuana during the months of October and early November 2019.

Mr. Sawyer's real problems seem to begin around the time he started using methamphetamine, in mid-November. Soon after, he started missing mental health and substance abuse counseling appointments, drug testing, and meetings at the Probation Office. In December, he was convicted of failing to register as a felon after the police responded to a family disturbance

call. At that time, it was discovered that he had not been residing at the place he had reported to his probation officer during his time on supervised release. His probation officer filed a petition to revoke his supervised release, because she was concerned that he was "in a downward spiral and continues to use illegal drugs despite our efforts to place him in treatment." (ECF No. 26 at 6.)

On January 3, 2020, Mr. Sawyer made an initial appearance. (ECF No. 29.) The government did not argue for detention. (*Id*.) He was released under the same conditions of supervised release and instructed to reside at his grandparents' home. (*Id*.) His revocation hearing was set for January 21, 2020, but he was not present at that time as he was in state custody. (ECF No. 33.) The petition was dismissed after the probation officer expressed her intent to file a new petition. (*Id.*) The new petition was immediately filed (ECF No. 34) and includes all of the allegations mentioned above, as well as a conviction for domestic battery on January 1, 2020 and a pending charge for robbery alleged to have taken place on January 10, 2020.[1] (*Id*.)

**DISCUSSION**

The release or detention of an individual facing potential violations of supervised release is controlled by Federal Rule of Criminal Procedure 32.1(a)(6) and 18 U.S.C. § 3143(a). The presumption is that the person will be detained unless he or she can establish "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a) and Fed. R. Crim. P. 32.1(a)(6).

**A. <u>Not likely to flee</u>**

This court finds that Mr. Sawyer established by clear and convincing evidence that if released under Section 3142(c), he is not likely to flee. While he allegedly failed to show up to various appointments, he was still in contact with the Department of Probation. For example, each time he did not show up to substance abuse and mental health counseling, an appointment was rescheduled. As to drug testing, he showed up in December despite having tested positive for the

---

[1] Mr. Sawyer is also alleged to be in violation of not seeking and maintaining employment during the period of supervision.

use of controlled substances and having missed several tests on previous occasions. This is not a case in which he started using drugs and absconded. Additionally, the fact that a petition to revoke his supervised release was not filed until December 18, 2020 and that the government did not argue for his detention on January 3, 2020 further evinces that there was no concern regarding his future compliance with court appearances.  After his release on January 3, 2020, he continued to show up for drug testing, even though he was testing positive for marijuana.

This court also notes that there appears to be a strong correlation between the allegations in the petition and Mr. Sawyer's increased use of drugs. However, Mr. Sawyer has been in custody since at least January 21, 2020. (ECF No. 33.) Accordingly, presumably, Mr. Sawyer has not been using any drugs in the last three months.

While the number and nature of the allegations in the petition are concerning, the reality is that nobody argued for detention based on flight risk on January 3, 2020. Since then, he was convicted of domestic violence and charged with robbery. However, the domestic violence charge seems to have been resolved, and the state court judge found it appropriate to release Mr. Sawyer pending trial on the robbery charge. Accordingly, these new charges (while problematic) do not change the court's conclusion that Mr. Sawyer has demonstrated by clear and convincing evidence that he is not likely to flee.

In sum, the defendant's continued contact with the Department of Probation, the position of the parties on January 3, 2020 regarding his release, and what appears to be a forced abstention from the use of drugs over the last few months convince this court that Mr. Sawyer is not likely to flee. His grandmother's willingness to serve as a third-party custodian also lends support to this finding.

### B. Not likely to pose a danger to the safety of any other person or the community

As mentioned previously, the statute requires this court to determine whether Mr. Sawyer has shown by clear and convincing evidence that he is not likely to pose a danger to the community if released under 3142(b) or (c). Clear and convincing evidence is a hard standard to meet; it has been defined as "an abiding conviction that the truth of its factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal citations omitted).

This court bears this high standard in mind, but also considers that the statute does not require Mr. Sawyer to *guarantee* he will not pose a danger. Instead, he must establish it is highly probable he is not likely to pose a danger to the safety of any other person or the community.

The court's concerns should be obvious: continued drug use and the commission of new offenses while on supervised release and parole.[2] Indeed, defendant's alleged robbery was committed after Judge Ferenbach released him on January 3, 2020 and approximately two weeks prior to his revocation hearing. The facts surrounding each of these alleged new offenses merit discussion.

The conviction he sustained for failing to register as a felon in December 2019 appears to have stemmed from a family disturbance call, involving his wife Alaina. The domestic violence conviction in January 2020 also involves Alaina. The underlying offense, for which he is currently on supervised release, involves Alaina as well. The court is cognizant of the fact that it cannot simply rely on the descriptions of events provided to law enforcement, which may only include the alleged victim's account. Having said that, Mr. Sawyer appears to have some serious issues that need to be resolved with his wife. However, defense counsel represented that Mr. Sawyer's wife no longer resides in Las Vegas and that she has relocated to Utah.

As to the pending robbery charges, Mr. Sawyer is alleged to have struck someone from loss prevention as he fled Home Depot. This court recognizes the procedural stage of that case and the fact that Mr. Sawyer is presumed innocent. Yet, as mentioned by the government, there is

---

[2]  Counsel for defense raised concerns about COVID-19 and argued this court's analysis as to the danger to the community prong should include the community of incarcerated individuals at the Nevada Southern Detention Center. In essence, the argument is that having come from other detention facilities, and having possibly been exposed to COVID-19, Mr. Sawyer represents a danger to the individuals currently held at Nevada Southern Detention Center. That is so because there is no information about whether he is positive for COVID-19 and may be an asymptomatic carrier, thus exposing others to the virus. But as discussed above, in the context of § 3143, this court considers whether he has established by clear and convincing evidence that he is not likely to pose a danger to the community "*if released* under section 3142(b) or (c)." Given the statutory language under § 3143, the community the statute appears to be referring to does not include those who are incarcerated.

a pattern of similar convictions, and most of them involve the display of knives. This court is also cognizant of the inherent unfairness of relying on defendant's past conduct to predict future conduct, as Mr. Sawyer can never rid himself of his past. Yet, as with many other things in life, the past can be—although it may not always be—a good predictor for the future.

Coming back to the question before this court—has Mr. Sawyer established by clear and convincing evidence that if released under 3142(b) or (c), he is not likely to a pose danger? The court finds that he has. This is an extremely close case, but there are key changes to Mr. Sawyer's circumstances that allow the court to make this finding. First, his wife is no longer in Las Vegas and the court will add conditions between now and the date of his revocation hearing ordering him to stay away from her. Next, Mr. Sawyer has been sobering up in custody for the last few months, and this court agrees with defense counsel that there is a correlation between the commission of new offenses and Mr. Sawyer's drug use. The facts surrounding Mr. Sawyer's pending robbery charge do not involve the use of weapons, although he allegedly struck someone while fleeing Home Depot. But it would appear, based on the information provided to this court, that he was using drugs around the time of the alleged offense.[3] It is also significant that he has already satisfied the sentences imposed as a result of the parole revocation[4] and that it is in his best interest to be on his best behavior between now and the time he appears for his revocation hearing. In short, Mr. Sawyer's apparent downward spiral has been interrupted by his continuous incarceration since mid-January. This satisfies the court that, with additional conditions imposed under 3142(c), Mr. Sawyer is not likely to pose a danger to others.

In addition to the conditions previously imposed, Mr. Sawyer shall reside at his grandmother's house on home confinement and be permitted to leave the residence only for medical purposes, to meet his attorney (in the event these meetings are taking place in person) and for any other reasons the Department of Probation deems fit. The Department of Probation

---

[3] The robbery is alleged to have taken place on January 10, 2020 and he tested positive for the use of drugs on January 6th and 9th of 2020. (ECF No. 35 at 3-4.)

[4] Mr. Sawyer's new conviction gave rise to a parole revocation hearing. He completed that sentence in the last few months.

will indicate the manner in which these requests need to be communicated. Mr. Sawyer will also be subject to electronic monitoring though the use of Smartlink (or similar device).[5] He will also be subject to additional drug testing and treatment (understanding and accounting for the fact that there may be some obstacles given the COVID-19 crisis). Mr. Sawyer also shall not have any contact with his wife, in person or otherwise.

## CONCLUSION

**IT IS ORDERED** that Mr. Sawyer be released from the Nevada Southern Detention Center.

**IT IS FURTHER ORDERED** that Mr. Sawyer shall reside at his grandmother's house on home confinement and be permitted to leave the residence only for medical purposes, to meet his attorney (in the event these meetings are taking place in person) and for any other reasons the Department of Probation deems fit. The Department of Probation will indicate the manner in which these requests need to be communicated.

**IT IS FURTHER ORDERED** that Mr. Sawyer will be subject to electronic monitoring though the use of Smartlink (or similar device).

**IT IS FURTHER ORDERED** that Mr. Sawyer will be subject to additional drug testing and treatment (understanding and accounting for the fact that there may be some obstacles given the COVID-19 crisis).

**IT IS FURTHER ORDERED** that Mr. Sawyer shall not have any contact with his wife, in person or otherwise.

DATED: May 6, 2020

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

---

[5] In the event Smartlink or a similar device is not available, the Department of Probation is to contact this court to address this issue.